CALIFORNIA ELECTRICAL WORKS *v.* FINCK *et al.*

(*Circuit Court, N. D. California.* September 14, 1891.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—OBJECTION AS TO PARTIES.
   Where a defendant in a suit in equity for the infringement of a patent makes objection for the first time at the argument on final hearing that there is a defect of parties, in that a person holding an equitable title to the patent is not a party to the suit, and for that reason the suit should be dismissed, but it appears that no such issue is made by the pleadings, and that during the taking of the testimony defendant's counsel admitted that the title to the patent was in the complainant, such objection comes too late, and will be overruled.

2. SAME—ADMISSIONS BY PLEADING.
   Where a defendant admits in his answer, and also in his testimony, that he has infringed the patent in suit, he is bound by such admission, and will not be allowed on final hearing to withdraw the admission and contend otherwise.

3. SAME—RIGHTS OF TERRITORIAL ASSIGNEE.
   The sale of patented articles by a territorial assignee within his territory does not confer upon the purchaser of such articles the right to carry them into the territory of another assignee, and there sell them in the usual course of trade, without the consent or license of the latter assignee.

In Equity.
*Langhorne & Miller*, for complainant.
*John L. Boone*, for respondents.

HAWLEY, J. This is a suit in equity for the infringement of letters patent issued to George F. Pinkham, as assignee of Jacob P. Terrill, the inventor, for "an electrical gas-lighting apparatus." Complainant owns the title of the patent, and has the exclusive right to make, use, and sell the patented article in the state of California. The Boston Electric Company owns the title, and has the same right to make, use, and sell the patented gas-lighter in the state of Massachusetts. Complainant's grantor acquired its title prior to the acquisition of the title of the Boston Electric Company to the state of Massachusetts. Certain preliminary objections are made by respondents to a consideration of this case upon its merits.

1. It is claimed that the testimony shows that the inventor, Terrill, made an assignment to one William R. Nutting, of Boston, Mass., about one year before the patent was issued, of all inventions in gas-lighting apparatus conceived or perfected by him during a certain period of time,—covering the time of the issuance of the patent to Pinkham; that these facts establish an equitable title to the patent and invention in Nutting, although the legal title is in Pinkham; and that, inasmuch as Nutting is not made a party, the suit should be dismissed. No such defense or plea is presented by the pleadings. No objection of this character was made during the taking of the testimony. During the taking of the testimony it was admitted by counsel "that at the date of the commencement of this suit, and at the times mentioned in the bill herein, the title of the patent sued on for the state of California was in complainant." When the assignment from Pinkham to the Boston Electric Company was offered in evidence, the allegations of the title in com-

plainant's bill were admitted, and further proof thereof was expressly waived by respondents' counsel. Upon this state of facts it would be unfair to complainant to consider this objection. The facts referred to in this brief of counsel in this connection are, in my opinion, insufficient to warrant the court to reopen the case, and permit the withdrawal of the admission and waiver as to title. The objection is overruled.

. 2. It is clai ed that there is no sufficient evidence to show that respondents have committed any infringement. This claim is sought to be maintained upon the ground that the only testimony of any sale made by respondents was of a sale to the complainant, and it is argued that the complainant cannot take advantage of its own wrong, etc. This contention cannot be sustained. Respondents, in their answer, state—

"That they constitute the firm of Will & Fink, and are engaged as partners under said name in conducting a large bazar and variety store in San Francisco, Cal.; that in the course of their said business they have purchased from the Boston Electric Company, a corporation doing business in Boston, Massachusetts, a number of electrical gas-lighting apparatus, and have placed them on sale in their said store, and have sold them to the trade in and about San Francisco, in said state of California."

This, in connection with the other averments in the answer, is an admission of the infringement. Moreover, the testimony of one of the respondents is to the same effect. Respondents are certainly bound by the averments in their answer and by their own testimony. The case must be considered upon its merits. The answer alleges as a defense—

"That these respondents, in the ordinary course of trade, purchased said electrical gas-lighting apparatus from said Boston Electric Company, and paid the price charged therefor, and that said price included the royalties or patent fees demanded by said Boston Electric Company."

Under the patent laws of the United States a patentee is granted the exclusive right to make, sell, and use his patented article, and may assign or grant this exclusive privilege to others to the whole or any specified part of the United States. Rev. St. U. S. 4898. When the patentee assigns the exclusive right to another person within certain defined territorial limits, he confers upon the purchaser the same rights and privileges within the limited territory which he previously had in the whole United States, and excludes himself from the rights of the patent within the assigned territory. The assignee has the right to make, use, and sell the patented articles within the territory assigned to him; but he is not authorized under the patent law to take the manufactured articles outside the limited territory, and there sell them. If he does, he is an infringer upon the rights of the patentee. The sale of the patented articles by a territorial assignee within his own territory does not confer upon the purchaser of such articles the right to carry the same into the territory of another assignee, and there sell them in the usual course of trade, without the consent or license of the latter assignee. Although the question has never been authoritatively settled by any decision of the supreme court of the United States, it has frequently been held in the circuit courts that where one purchases a patented article from the

owner of the patent-right for a certain territory he has no right to sell the same in the course of trade in a territory for which another owns the exclusive territorial rights. *Hatch* v. *Adams*, 22 Fed. Rep. 436; *Hatch* v. *Hall*, Id. 438, 30 Fed. Rep. 613; *Folding-Bed Co.* v. *Keeler*, 37 Fed. Rep. 693, 41 Fed. Rep. 51; *Sheldon Axle Co.* v. *Standard Axle-Works*, 37 Fed. Rep. 789. The leading case bearing upon this subject in the supreme court of the United States is *Adams* v. *Burke*, 17 Wall. 453. It is commented upon in all of the cases above referred to. The decision in that case was to the effect that, where a patentee has assigned his right to make, sell, and use his patented article within certain defined territorial limits, the purchaser of such patented article, when rightfully bought within the prescribed limits, acquires by such purchase the right to use it anywhere, without reference to any other assignment of territorial rights by the patentee; that the right to the use of such articles or instruments stands on a different ground from the right to make and sell them, and inheres in the nature of a contract of purchase, which carries no implied limitation of the right to use within a given locality. The justices of the supreme court were fully aware of the importance of the principles that were to be announced in that case, and took the precaution to limit the scope of their decision to the only question which they considered at issue in that case. This is made clear by the language of Mr. Justice MILLER, who delivered the opinion of the court:

"The question presented by the plea in this case is a very interesting one in patent law, and the precise point in it has never been decided by this court. The vast pecuniary results involved in such cases, as well as the public interest, admonish us to proceed with care, and to decide in each case no more than what is directly in issue."

After referring to the manufacture of articles whose sole value is in their use, the opinion proceeds:

"It seems to us that, although the right of Lockhart & Seelye to manufacture, to sell, and to use these coffin-lids was limited to the circle of ten miles around Boston, a purchaser from them of a single coffin acquired the right to use that coffin for the purpose for which all coffins are used; that, so far as the use of it was concerned, the patentee had received his consideration, and it was no longer within the monopoly of the patent. It would be to ingraft a limitation upon the right of use not contemplated by the statute, nor within the reason of the contract, to say that it could only be used within the ten-miles circle. Whatever, therefore, may be the rule when patentees subdivide territorially their patents as to the exclusive right to make or to sell within a limited territory, we hold that in the class of machines or implements we have described, when they are once lawfully made and sold, there is no restriction on their use to be implied for the benefit of the patentee or his assignees or licensees. A careful examination of the plea satisfies us that the defendant, who, as an undertaker, purchased each of these coffins, and used it in burying the body which he was employed to bury, acquired the right to this use of it freed from any claim of patentee, though purchased within the ten-mile circuit and used without it."

Mr. Justice BRADLEY delivered a dissenting opinion, which was concurred in by Mr. Justice SWAYNE and Mr. Justice STRONG, to the effect that the interest of the assignee in the patent "was limited in locality

both as to manufacture and to use." In *Boesch* v. *Graff*, 133 U. S. 698, 10 Sup. Ct. Rep. 378, a case where the alleged infringer had purchased in Germany patented lamp-burners from a person who had authority to make and sell them in that country, and had imported them into the United States, and there was selling them in the usual course of trade, the court, after quoting from *Adams* v. *Burke, supra,* said:

"The right which Hecht had to make and sell the burners in Germany was allowed him under the laws of that country, and purchasers from him could not thereby be authorized to sell the articles in the United States in defiance of the rights of patentees under a United States patent."

The decision in *McKay* v. *Wooster*, 2 Sawy. 373, must be construed and confined to the interpretation placed upon it by Judge SAWYER in *Graff* v. *Boesch*, 33 Fed. Rep. 279, and, when so construed, is certainly not in opposition to the views I have expressed. Other authorities relied upon by respondents relate to the use and not to the sale of the patented articles. Complainant is entitled to a decree for an injunction and for an accounting. Let the usual decree be entered, as prayed for in complainant's bill.